```
                  UNITED STATES  DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**UNITED STATES OF AMERICA                CRIMINAL NO. 10-51**

**versus                                  SECTION: "I"**

**JEFFREY LEHRMANN**


Before the Court is a  motion filed by the government pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure to reduce by half Mr. Lehrmann's 36 month sentence of imprisonment to 18 months.  A brief recitation of the factual basis underlying this conviction will be helpful to understanding why the government's motion is DENIED.

In its reasons for sentence, this Court stated in relevant part:

    On September 4, 2005, in the wake of Hurricane Katrina, you
and your fellow officers learned of a radio call for police
assistance at the Danziger Bridge.  You responded to the scene
and you arrived as other officers were engaged in a shooting on
the east side of the bridge which resulted in the death of one
civilian and the wounding of four others.  While you were on the
east side of the bridge, some of the officers crossed to the west
side and engaged in a second shooting on the west side of the
bridge which resulted in the death of a 40 year old severely
disabled man identified as Ronald Madison.

    After you and others returned to your temporary station at
the Crystal Palace on Chef Menteur Highway, you talked to a
supervisor who had been assigned to investigate the shootings on
the bridge and you learned that an officer had shot an innocent
man.  You also learned that officers involved in the shootings

                                1

had met with the supervisor and that a false story to justify the incident was being developed.

During the weeks that followed, you assisted the supervisor and the shooters in the development of their false stories.  You communicated ideas and suggestions to the shooters to make sure that they would go along with the fabricated stories.  You assisted in memorializing summaries of the stories developed and provided by the officers.  You discussed those accounts with other officers in order to make sure that the officers were "okay" with the accounts being attributed to them.

During the meetings with the shooters, you discussed ways that the shooters could change their stories in order to help justify the shootings.  For instance, you met with the officer who shot and killed Ronald Madison and passed on the suggestion, developed in consultation with others, that the officer should state that Madison had looked at the officer and turned toward him several times while reaching toward his waistband.  You also discussed how you could use Hurricane Katrina to make the entire situation "go away."  You were told that Hurricane Katrina could be used as an excuse for the failure to immediately collect evidence from the scene.

Weeks later, you watched as a supervisor kicked spent shell casings off the bridge.  Working together with others to finalize a report regarding the Danziger Bridge incident, it was decided that falsified summaries of interviews with two victims of the Danziger Bridge shootings would be incorporated into the report.  There would be a false claim in the report that two of the civilians shot on the bridge had both admitted to you and your supervisor that they had seen their nephew, who was also shot on the bridge, fire a gun at police officers.  You knew that was not true.

The report also contained a false claim that two civilian eyewitnesses, "Lakeisha Smith" and "James Youngman", had witnessed parts of the shooting and that they had offered information justifying the actions of your fellow officers.  Specifically, the report included the fabricated claim that Lakeisha Smith had witnessed the shooting of Ronald Madison and that she had told a supervisor that she saw Madison reach into his waistband and turn toward officers before being shot.  There

is also the fabricated claim that Lakeisha Smith had recognized Madison and his brother as perpetrators who had been looting and robbing people since the storm.

In fact, Lakeisha Smith did not exist.  You provided that name to your supervisor in order to falsely identify a witness who could support the fabricated claims.  It is particularly abhorrent that as a result of material false statements made by you and other officers, Ronald Madison, the young man shot to death on the Danziger Bridge, and Lance Madison, who was unlawfully detained, were characterized as common criminals.  You, being oblivious to the emotional turmoil already sustained by the Madison family, compounded and magnified it by characterizing them as such.

Similarly, another eyewitness was invented, "James Youngman", who allegedly told the NOPD supervisor at the scene that the civilians had first fired at the officers and that the officers fired in response.  As you knew, James Youngman did not exist.

You also knew that the report contained the false claim that your supervisor had returned to the bridge the day after the shooting and located the revolver in the grass surrounding the area where persons had been shot.  The account about the gun was a lie.

Compounding that falsehood, several weeks after this incident, your supervisor testified during a state court hearing against Lance Madison, who had been arrested on the Danziger Bridge for shooting at police officers.  After the hearing, the supervisor told you that he had testified that a gun was found under the Danziger Bridge.  Shortly thereafter, your supervisor, yourself, and others drove to the supervisor's home where a bag was retrieved from a storage container in the garage.  When you asked the supervisor what was in the bag, the supervisor responded a "ham sandwich."  When you looked in the bag, you observed a revolver that would later be used in the Danziger Bridge investigation.  You asked the supervisor if the gun was "clean," meaning that it could not be traced back to another crime, and you were assured that it was.  You and others went along with a scheme to plant the gun.

3

On October 11, 2005, you and your supervisor turned the gun into NOPD's central evidence and property room and completed paperwork indicating that the gun was evidence in the Danziger Bridge case. You completed paperwork claiming that the gun had been "confiscated" from Lance Madison.

The factual basis contains several other falsities which this Court need not repeat and in which you participated during this investigation. Included is the fact that you provided false testimony to the federal grand jury investigating this matter and that you made false statements to the Federal Bureau of Investigation. Those particular actions, while troublesome enough when committed by non-law enforcement witnesses, are even more troubling and disturbing to this Court when committed by a law enforcement officer.[1]

As if the factual basis to which the defendant admitted was not sufficient to justify a maximum sentence of three years imprisonment, the Court also noted at the time of sentencing that, for a period of approximately four years, this defendant knew that he and other NOPD officers had committed federal crimes, but he failed to report those crimes to federal authorities. It was only after Mr. Lehrmann heard the footsteps of an expansive federal investigation that he came forward. Apparently, Mr. Lehrmann's conscience waited approximately four years to reveal itself. If he had initially come forward and told the truth, Lance Madison would not have been wrongfully detained and denied his freedom.

---

[1] Rec. Doc. No.46

4

At sentencing, this Court further recognized the pain and anguish that Mr. Lehrmann's conduct caused this community, the wrongfully accused, as well as the families of fellow New Orleanians injured and/or killed on the Danziger Bridge. I referred to this post-Katrina episode as a disgrace of immense proportion. This Court noted that as a result of such conduct, other law enforcement officers must now continually respond to public skepticism related to the manner in which they perform their duties.

Mr. Lehrmann has already been sufficiently rewarded by the government for the cooperation that he rendered after being confronted by the government. The U.S. Bureau of Prisons has advised the Court, through the United States Probation Service, that Mr. Lehrmann, assuming that he receives all good time credit, will serve approximately 31.8 months of a 36 month sentence. If this Court were to agree to reduce Mr. Lehrmann's sentence as requested by the government, Mr. Lehrmann, again assuming that he receives all good time credit, will serve 15.9 months of an 18 month sentence. The remaining Danziger defendants who proceeded to trial all face sentences significantly more severe than the three years received by this defendant.

Mr. Lehrmann may have faced a difficult situation had he reported his colleagues in 2005 but, as I stated at Mr. Lehrmann's sentencing, his situation was not nearly as difficult as that faced by the victims and their families.  The concern voiced by the government, that this Court should grant its motion and send a message to other officers that it is in their personal interest to cooperate, has already been adequately addressed by the government's own charging decision in this case.  The plea agreement negotiated by  Mr. Lehrmann through his counsel was significant in that it considerably limited Mr. Lehrmann's exposure and shielded him from a punishment which was potentially more severe.

Although the government has advised the Court that it has discussed its recommendation with the victims in this case who share the government's belief that the ultimate sentence meted out should achieve a careful balance between deterrence of wrong doing and encouragement of truthful cooperation, the victims stand in a different posture than this Court.  They did not have the benefit of this Court's thinking when allegedly stamping a seal of approval on the government's motion.

 Notwithstanding the compassion and respect that this Court has for all of the victims on the Danziger Bridge and their

**families, this Court is confident that the victims all too well understand that when determining an appropriate sentence for Mr. Lehrmann, this Court considered all of the applicable sentencing factors set forth in 18 U.S.C. §3553, including the need for this sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  The Court considered the need to afford adequate deterrence to criminal conduct and the kinds of sentences applicable to the defendant in the above-captioned case.[2]**

**In this Court's view, for the reasons stated, the government has failed to appropriately balance Mr. Lehrmann's cooperation and the facts surrounding such cooperation against his underlying conduct and the considerable benefit that he has already received from the government.  This Court cannot in good conscience**

---

[2] In its motion for reduction of sentence, the government states that this Court agreed on the date of sentence that it would "consider a Rule 35 motion" at the appropriate time if there was continued cooperation by Mr. Lehrmann.  In order to accurately place that comment in context, it is important to note that while it is true that this Court indicated that it was only through continued cooperation that Mr. Lehrmann could hope for a reduction of sentence, the Court never stated that it would grant the same.  Furthermore, as the government well knows, it is up to the government, not the Court, to initiate a request for a reduction of sentence and the Court has no choice but to consider the same once such a motion is filed.
    In connection with this Court's denial of the government's request that Mr. Lehrmann's sentencing be continued because of the government's concern that Mr. Lehrmann would not have the incentive to continue to fully cooperate if he were sentenced, this Court noted that any motion for reduction based on continued cooperation would be "addressed" by this Court following the completion of such cooperation.  This Court never implied that such a motion would be granted.

support the government's view that any reward in addition to that already provided by the government is appropriate with respect to Mr. Lehrmann.  Accordingly, the government's motion to reduce Mr. Lehrmann's sentence is DENIED.

New Orleans, Louisiana, this 15th day of September, 2011.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE